**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Fort Myers Division**

**DEVEN ZIERTMAN,**

                                             CASE NO.:

     *Plaintiff,*

**v.**

**TRANS UNION, LLC, EXPERIAN**
**INFORMATION SOLUTIONS, INC.,**
**EQUIFAX INFORMATION SERVICES**
**LLC, JP MORGAN CHASE BANK, N.A.,**
**AMERICAN EXPRESS COMPANY, and**
**CREDIT INTERNATIONAL**
**CORPORATION,**

     *Defendants.*

_____/

**<u>PLAINTIFF'S COMPLAINT</u>**
**<u>JURY DEMAND</u>**

1.   Plaintiff, Deven Ziertman (hereinafter "Plaintiff") brings this action against Defendants Trans Union, LLC ("Trans Union"), Experian Information Solutions, Inc. ("Experian"), Equifax Information Services LLC ("Equifax"), JP Morgan Chase Bank, N.A. ("CHASE"), American Express Company ("AMEX"), and Credit International Corporation ("CIC"), for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et. seq. (hereinafter "FCRA").

2.   Plaintiff further alleges violation of the Florida Consumer Collection Practices Act, Florida Statute §559.72 et. seq. (hereinafter "FCCPA") against JP Morgan Chase Bank, N.A., American Express Company, and Credit International Corporation.

**<u>JURISDICTION AND VENUE</u>**

3.   This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

4.    Supplemental jurisdiction exists for Plaintiff's FCCPA claims pursuant to 28 U.S.C. § 1367.

5.    Defendants' voluntary contact with Plaintiff in Florida made it foreseeable that they would be hailed into a Florida court. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985).

6.    Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Charlotte County, Florida.

## PARTIES

7.    Plaintiff is a natural person who, at all times relevant to this action is and was a resident of Charlotte County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c), 15 U.S.C. §1692a(3) and Florida Statute §559.55(8).

8.    Trans Union is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

9.    Trans Union is a limited liability company incorporated under the laws of the State of Delaware, whose members are citizens of the state of Illinois. Trans Union is authorized to do business in and regularly conducts business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

10.    Experian is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

11.    Experian is an Ohio corporation incorporated under the laws of the State of Delaware. Experian is authorized to do business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

2

12.     Equifax is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

13.     Equifax is a Georgia limited liability company incorporated under the laws of the State of Delaware. Equifax is authorized to do business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

14.     Defendant CHASE is a corporation that regularly conducts business in the State of Florida or is registered to conduct business in the state of Florida with a principal place of business located at 383 Madison Avenue, New York, NY 10179.

15.     Defendant CHASE is a "debt collector" within the meaning of Florida Statute §559.55(7).

16.     Defendant AMEX is a corporation that regularly conducts business in the state of Florida or is registered to conduct business in the State of Florida with a principal place of business located at 200 Vesey Street, New York, NY 10285.

17.     Defendant AMEX is a "debt collector" within the meaning of Florida Statute §559.55(7).

18.     Defendant CIC is a corporation that regularly conducts business in the state of Florida or is registered to conduct business in the State of Florida with a principal place of business located at 10413 Beardslee Coulevard, Suite A, Bothell, WA 98011.

19.     Defendant CIC is a "debt collector" within the meaning of Florida Statute §559.55(7).

20.     Defendants CHASE, AMEX and CIC use instrumentalities of interstate commerce for the purpose of furnishing information on specific trade accounts to the consumer reporting agencies, Trans Union, Equifax and Experian, (collectively "credit reporting agencies").

21.     These instrumentalities of interstate commerce are largely electronic, written, or telephonic communications which have effects on consumers and their credit reports within the State of Florida.

### STATUTORY FRAMEWORK OF THE FAIR CREDIT REPORTING ACT

30.     The Fair Credit Reporting Act, 15 U.S.C. §1681 et. seq., was originally enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

31.     Congress found that "[i]naccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." See 15 U.S.C. §1681(a)(1).

32.     "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his file; he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy." The Fair Credit Reporting Act seeks to secure these rights." Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969).

32.     A "furnisher of information" provides information about consumers' credit history to credit reporting agencies. See 15 U.S.C. §1681s-2.

33.     Congress also found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." See 15 U.S.C. § 1681(a)(3),(4).

34.     The FCRA was amended by Congress in 2003 by the Fair and Accurate Credit Transaction Act ("FACTA"), Pub L. No. 108-159 (2003), in order to, among other things, "prevent identity theft, improve resolution of consumer disputes, [and] improve the accuracy of consumer records."

36.     Prior to the 2003 amendments, victims of identity theft were afforded no special protections under the FCRA. As such, consumer reporting agencies ("CRAs", and also referred to herein as "credit reporting agencies") were under no obligation to treat an identity theft claim any different than a regular dispute.

37.     The 2003 amendments made it easier for identity theft victims to get information resulting from identity theft removed from their credit reports. By enacting 15 U.S.C. § 1681c-2(a), Congress required credit reporting agencies to block the reporting of any information in the file of a consumer that the consumer identifies as resulting from identity theft, not later than four business days after receiving (1) appropriate proof of identity, (2) a copy of an identity theft report, (3) the identification of such information by the consumer, and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

38.     A credit reporting agency may decline to "block" information only if the credit reporting agency reasonably determines that the consumer's request is made in error, was based on a material misrepresentation or the consumer obtained goods, services or money as a result of

the blocked transaction. See 15 U.S.C. § 1681c-2(c)(1). 15. If a block is declined, the credit reporting agency must then notify the consumer promptly, in the same manner as consumers are notified of the reinsertion of information under § 1681i(a)(5)(B).  See 15 U.S.C. §§ 1681c-2(c)(2).

39.     In the absence of such a determination of material misrepresentation or error, a credit reporting agency cannot decline a request to block without first requesting additional information from the consumer for the purpose of determining the validity of the alleged identity theft. See 12 C.F.R. § 1022.3(i)(1)(iii)(A).

40.     "[I]f a CRA receives a police report containing detailed information as well as the signature, badge number, or other identifying information for the officer taking the report, it is not reasonable for the CRA to request additional information without 'an identifiable concern,' such as an indication that the report was fraudulent." Osada v. Experian Info. Solutions, Inc., No. 11-C-2856, 2012 WL 1050067, at *3 (N.D. Ill. Mar. 28, 2012) (citing 16 C.F.R. § 603.3(c)(1) (renumbered at 12 C.F.R. § 1022.3(i)(3)(i)).

41.     The FCRA requires a credit reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information" each time it prepares a consumer report. 15 U.S.C. § 1681e(b).

42.     The FCRA requires that if a consumer disputes any item of information contained in their credit file, the credit reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."15 U.S.C.S. § 1681i(a)(1)(A).

43.     In performing the reinvestigation, the FCRA requires the credit reporting agency to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." 15 U.S.C.S. § 1681i(a)(4).

44.     The FCRA also requires the credit reporting agency to provide notification of the dispute to the person who provided any item that is disputed, along with all relevant information received from the consumer regarding the dispute. 15 U.S.C.S. § 1681i(a)(2)(A).

45.     The FCRA requirements are important, because they help credit reporting agencies ensure that the information in their consumer reports is accurate, they assure that consumers know all the information that is in their files and who has received or requested their reports, and they protect consumer privacy.

46.     If the violation is negligent, the FCRA allows the consumer to recover actual damages. 15 U.S.C. § 1681o(a).

47.     If the violation is willful, the consumer may recover any actual damages, or statutory damages of not less than $100 and not more than $1,000, and punitive damages. 15 U.S.C. § 1681n(a).

48.     A consumer who succeeds on a FCRA action is also entitled to recover their costs and reasonable attorney fees.  15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).

49.     The FCRA provides a private right of action against any person that violates the provisions of the FCRA. See 15 U.S.C. §§ 1681o, 1691n.

50.     The FCRA prohibits a CRA from furnishing a consumer report on a consumer unless it has reason to believe that the person requesting the report intends to use the information in connection with a credit transaction, insurance underwriting, or other legitimate business

purpose involving the consumer on whom the information is to be furnished. 15 U.S.C. § 1681b(a)(3).

51.    The FCRA prohibits a CRA from furnishing to any person a record of inquiries in connection with a credit or insurance transaction that is not initiated by a consumer. 15 U.S.C. § 1681b(c)(3).

52.    "Furnishers of information" under the FCRA, pursuant to 15 U.S.C. §1681s-2(b) to conduct a reasonable investigation into each of the written disputes that it receives from the credit reporting agencies. See also Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1302 (11th Cir. 2016).

53.    The FCRA requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports. 15 U.S.C. § 1681e(b). If a consumer disputes information contained in their credit report, the FCRA requires a credit reporting agency to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."15 U.S.C.S. § 1681i(a)(1)(A).

54.    If the disputed information is inaccurate or incomplete or cannot be verified, the consumer reporting agency "shall…(i)  promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii)  promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." 15 U.S.C. § 1681(a)(5)(A)(i),(ii).

55.      If the violation is negligent, the FCRA allows the consumer to recover actual damages (§ 1681o(a)); however, if the violation is willful, the consumer may recover any actual damages or statutory damages from not less than $100.00 and not more than $1,000. § 1681n(a).

56.      Under the FCRA, "[t]he term "consumer report" generally refers to any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for-

(A)     credit or insurance to be used primarily for personal, family, or household purposes;

(B)     employment purposes; or

(C)     any other purpose authorized under section 1681b of this title."

U.S.C. § 1681a(d)(1).

57.      The terms "consumer report", "credit report", and "consumer credit report" are used synonymously herein.

*National CRAs and Furnishers Communicate Consumer Disputes and Responses via the E-Oscar Reporting Platform*

58.      The FCRA requires CRAs to implement an automated reinvestigation system through which furnishers of information to the CRAs may report the results of a reinvestigation that finds incomplete or inaccurate information in a consumer's file. 15 U.S.C. § 1681i(a)(5)(D). To comply with the automated dispute reinvestigation requirements of the FCRA, Trans Union, Equifax, and Experian along with Innovis Data Solutions, Inc., developed and implemented a browser-based software system that allows the CRAs to electronically notify furnishers quickly and easily of disputed credit reporting information, and for furnishers to quickly and easily respond to such disputes following the furnisher's investigation of the disputed information.

59.     The system is commonly referred to as e-OSCAR (Online Solution for Complete and Accurate Reporting) and was designed to be Metro 2 compliant. See http://www.e-oscar.org/gettingstarted (last accessed December 9, 2025).

60.     The e-OSCAR system primarily supports Automated Credit Dispute Verification ("ACDV") and Automated Universal Data Form ("AUD") processing, as well as other consumer-dispute-related processes. See http://www.e-oscar.org/gettingstarted (last accessed December 9, 2025).

61.     The National CRAs provide notice of a consumer's dispute to data furnishers in the ACDV format and forward the ACDV to the furnisher through e-OSCAR.

62.     If a furnisher's investigation of a consumer's dispute determines that the information in dispute is incomplete or inaccurate, the FCRA requires the furnisher to correct the information not only with the CRA that sent the ACDV, but with all other CRAs to whom the furnisher reported that information. 15 U.S.C. § 1681s-2(b)(1)(D).

63.     The e-OSCAR system facilitates the furnisher's compliance with 15 U.S.C. § 1681s-2(b)(1)(D) by sending a "Carbon Copy" of an ACDV response "to each CRA with whom the [furnisher] has a reporting relationship" in addition to the response to the initiating CRA. See http://www.e-oscar.org/gettingstarted (last accessed December 9, 2025).

64.     Additionally, a furnisher can manually correct a tradeline with a CRA other than the one that initiated a dispute by sending an AUD within e-OSCAR.

65.     Trans Union, Experian, and Equifax each require data furnishers that report to them respectively to register with and use e-OSCAR, and state that e-OSCAR is "in compliance with FCRA and Metro 2 standards." See https://www.transunion.com/data-reporting/support-teams (last accessed December 9, 2025).

## The FCCPA

67.    The FCCPA's goal is to "provide the consumer with the most protection possible." See LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing Fla. Stat. § 559.552).

68.    The FCCPA provides that no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." See Fla. Stat. § 559.72(9).

69.    "The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper, including enjoining the defendant from further violations of this part." See Fla. Stat. §559.77(2).

70.    As a consumer, the Plaintiff has a private right of action against CHASE, AMEX and CIC pursuant to Florida Statute §559.77(2), which provides that "[a]ny person who fails to comply with any provision of s. 559.72 is liable for actual damages and for additional statutory damages . . . not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff." (omissions added).

## FACTUAL ALLEGATIONS

71.    The Plaintiff is a documented victim of identity theft and lodged an Incident Report with the Anoka County Sherif's Office on September 27, 2024, affirming and explaining that he is a victim of identity theft and has suffered adverse consequences arising therefrom.

72.    That in further support of his identity theft claims, the Plaintiff filed an Identity Theft Affidavit with the Federal Trade Commission (FTC) on February 20, 2025, thereby taking all reasonable steps to notify law enforcement authorities and relevant agencies of fraudulent activities carried out in his name.

**Disputes With Trans Union, CHASE and AMEX**

73.     On or about April 17, 2025, the Plaintiff received the investigation result conducted by Trans Union regarding a disputed hard inquiry, reported as, ELAN FIN SVCSEDWARD JONES - REQUESTED ON 01/29/2024, wherein Trans Union deleted the said hard inquiry. However, upon reviewing credit reports dated July 18, 2025 and September 22, 2025, the Plaintiff found that the same inquiry was again being reported as accurate.

74.     On or about April 17, 2025, the Plaintiff received the investigation result conducted by TransUnion regarding a disputed tradeline, reported as, JPMCB CARD SERVICES - ACCOUNT NUMBER: [XXXXXXXX]2848, wherein Trans Union has investigated the information being disputed and updated the original charge off and historical trended data. However, upon reviewing credit reports dated July 18, 2025 and September 22, 2025, the Plaintiff found that the same information was again being reported as accurate.

75.     On or about April 17, 2025, the Plaintiff received the investigation result conducted by TransUnion regarding a disputed tradeline, reported as, AMERICAN EXPRESS - ACCOUNT NUMBER: [XXXXXXXX]0621, wherein Trans Union has investigated the information, and the disputed information is verified as accurate, but the historical trended data has been updated. However, upon reviewing credit reports dated July 18, 2025 and September 22, 2025, the Plaintiff found that the same information was again being reported as accurate.

76.     On or about April 17, 2025, the Plaintiff received the investigation result conducted by TransUnion regarding a disputed tradeline, reported as, AMERICAN EXPRESS - ACCOUNT NUMBER: [XXXXXXXX]0057, wherein Trans Union has investigated the information, and the disputed information is verified as accurate, but the historical trended data has been updated.

However, upon reviewing credit reports dated July 18, 2025 and September 22, 2025, the Plaintiff found that the same information was again being reported as accurate.

77.      On or about June 6, 2025, the Plaintiff received the investigation result conducted by TransUnion regarding a disputed tradeline, reported as, AMERICAN EXPRESS - ACCOUNT NUMBER: [XXXXXXXX]4424, wherein Trans Union has investigated the information disputed and this previously deleted item has now been verified and added back to the Plaintiffs credit report. Upon reviewing the credit reports dated July 18, 2025 and September 22, 2025, the Plaintiff found that the same information was being reported as accurate.

78.      On or about July 15, 2025, the Plaintiff received the investigation result conducted by TransUnion regarding a disputed tradeline, reported as, AMERICAN EXPRESS - ACCOUNT NUMBER: [XXXXXXXX]4424, wherein Trans Union has investigated the information, and the disputed information is verified as accurate, but the balance, date updated, high balance, past due, remarks, rating have been updated. However, upon reviewing credit reports dated July 18, 2025 and September 22, 2025, the Plaintiff found that the same information was again being reported as accurate.

79.      The Plaintiff mailed a dispute letter to Trans Union which was received by TransUnion on June 16, 2025, as a precautionary measure disputing the fraudulent tradeline, reported as, JPMCB Card - Account No. [XXXXXXXX]2848 - Recent balance: $27,693, on the grounds of identity theft, as the Plaintiff never opened nor authorized the opening of said account. In response, on June 21, 2025, Trans Union issued a fraud block request declined letter. Once again on June 21, 2025, Trans Union issued a letter to the Plaintiff explaining, remedying the effect of identity theft and attached summary of rights of a victim of identity theft. On July 15, 2025, Trans Union issued investigation results stating the disputed information was verified as accurate,

although maximum delinquency and historical trended data were updated. Upon reviewing credit reports dated July 18, 2025 and September 22, 2025, the Plaintiff found that the same information was being reported as accurate.

80.    The Plaintiff once again mailed a dispute letter to TransUnion which was received by TransUnion on August 5, 2025, disputing the fraudulent tradeline, reported as, JPMCB CARD SERVICES - Account Number. [XXXXXXXX]2848 - Balance: $27,693 - Pay Status: Charge off, on the grounds of identity theft, as the Plaintiff did not open this account or authorize this account. In response, on August 8, 2025, TransUnion issued a fraud block request declined letter. Once again on August 8, 2025, TransUnion issued a letter to the Plaintiff explaining, remedying the effect of identity theft and attached summary of rights of a victim of identity theft. TransUnion did not issue any investigation results. Upon reviewing the credit report dated September 22, 2025, the Plaintiff found that the same inaccurate information continued to be reported.

81.    The Plaintiff once again mailed a dispute letter to TransUnion which was received by TransUnion on August 5, 2025, disputing the fraudulent tradeline, reported as, AMERICAN EXPRESS - ACCOUNT NUMBER: [XXXXXXXX]4424 - BALANCE: $4,543 - PAY STATUS: COLLECTION - DATE CLOSED: 02/17/2025 - PAYMENT HISTORY: JAN 2024 TO JUN 2025 RATING X, on the grounds of identity theft, as the Plaintiff had no knowledge of this collection account and did not authorize its creation. In response, on August 8, 2025, TransUnion issued a fraud block request declined letter. Once again on August 8, 2025, TransUnion issued a letter to the Plaintiff explaining, remedying the effect of identity theft and attached summary of rights of a victim of identity theft. TransUnion did not issue any investigation results. Upon reviewing the credit report dated September 22, 2025, the Plaintiff found that the same inaccurate information continued to be reported.

**Disputes With Experian and CHASE**

82.     The Plaintiff mailed a dispute letter to Experian which was received by Experian on May 29, 2025, disputing the incorrect address, reported as, 1627 PLAYER CT UPLAND CA 91784-9125 - ADDRESS ID: #0923845576, on the grounds of identity theft, as the Plaintiff has no lease, tenancy or association with this address. Experian has not issued any investigation result. Upon reviewing the credit report dated June 30, 2025, the same fraudulent address was being reported as accurate.

83.     The Plaintiff mailed a dispute letter to Experian which was received by Experian on May 29, 2025, disputing the fraudulent tradeline, reported as, JPMCB CARD - PARTIAL ACCT # [XXXXXXXX]2848 - RECENT BALANCE: $27,268, on the grounds of identity theft, as the Plaintiff did not open this account or authorize this account. Experian has not issued any investigation result. Upon reviewing the credit report dated June 30, 2025, the same fraudulent address was being reported as accurate.

**Disputes With Equifax, CHASE, AMEX and CIC**

84.     On or about April 3, 2025, the Plaintiff received the investigation result conducted by Equifax regarding a disputed hard inquiry, reported as, CAPITAL ONE/CABELASH EQUIFAX - INQUIRY DATE: 12/14/24, wherein Equifax stated that inquiries are a factual record of file access. Upon reviewing the credit reports dated April 15, 2025 and June 30, 2025, the same disputed hard inquiry continued to be reported as accurate.

85.     On or about April 3, 2025, the Plaintiff received the investigation result conducted by Equifax regarding a disputed hard inquiry, reported as, JPMCB CARD - INQUIRY DATE: 04/01/2024, wherein Equifax stated that the disputed item is not currently reporting on the Equifax credit report. However, upon reviewing the credit reports dated April 15, 2025 and June 30, 2025,

the same hard inquiry is now being reported with a changed inquiry date of February 21, 2024 and marked as accurate.

86.    On or about April 3, 2025, the Plaintiff received the investigation result conducted by Equifax regarding a disputed tradeline, reported as, JPMCB CARD SERVICES - ACCOUNT NUMBER: 4423, wherein Equifax stated it is verified that this account belongs to the Plaintiff but the additional information and historical account information have been modified. Upon reviewing the credit reports dated April 15, 2025 and June 30, 2025, the same tradeline continued to be reported as accurate.

87.    On or about April 3, 2025, the Plaintiff received the investigation result conducted by Equifax regarding a disputed tradeline, reported as, JPMCB AUTO FINANCE - ACCOUNT NUMBER: 5900, wherein Equifax stated it is verified that this account belongs to the Plaintiff, but the additional information and closed date have been modified. Upon reviewing the credit reports dated April 15, 2025 and June 30, 2025, the same tradeline continued to be reported as accurate.

88.    On or about April 3, 2025, the Plaintiff received the investigation result conducted by Equifax regarding a disputed tradeline, reported as, AMERICAN EXPRESS - ACCOUNT NUMBER: 3883, wherein Equifax stated it is verified that this account belongs to the Plaintiff but the additional information, past due, historical account information have been modified. Upon reviewing the credit reports dated April 15, 2025 and June 30, 2025, the same tradeline continued to be reported as accurate.

89.    On or about April 3, 2025, the Plaintiff received the investigation result conducted by Equifax regarding a disputed tradeline, reported as, AMERICAN EXPRESS - ACCOUNT NUMBER: 3573, wherein Equifax stated it is verified that this account belongs to the Plaintiff but

the additional information, closed date, activity designator, historical account information, have been modified. Upon reviewing the credit reports dated April 15, 2025 and June 30, 2025, the same tradeline continued to be reported as accurate.

90.     The Plaintiff mailed a dispute letter to Equifax which was received by Equifax on May 30, 2025, disputing the incorrect name reported as, KEVIN ZIMMERMAN, on the grounds of identity theft, as the Plaintiff has never been legally or financially associated with this name. In Response on June 3, 2025, Equifax issued a letter stating the Plaintiffs documents are illegible and requested that identity documents be resent. The Plaintiff had already submitted all the required documentation along with the dispute letter. Once again on June 3, 2025, Equifax issued another letter stating that it is not blocking the disputed information at this time.   On June 6, 2025, Equifax issued a letter explaining to the Plaintiff concerning remedying effects of identity theft.

91.     The Plaintiff mailed a dispute letter to Equifax which was received by Equifax on May 30, 2025, disputing the incorrect address, reported as, 1627 PLAYER CT UPLAND CA 91784, on the grounds of identity theft, as the Plaintiff has no lease, tenancy or association with this address. In Response on June 3, 2025, Equifax issued a letter stating that the Plaintiffs documents are illegible and again requested identity documents be resent. The Plaintiff has already provided required documentation along with the dispute letter. Once again on June 3, 2025, Equifax issued another letter stating that it is not blocking the disputed information at this time. On June 6, 2025, Equifax issued a letter explaining the remedying effects of identity theft.

92.     That the Plaintiff mailed a dispute letter to Equifax which was received by Equifax on May 30, 2025, disputing the incorrect address, reported as, 1613 MASTERS DR UPLAND CA 91784, on the grounds of identity theft, as the Plaintiff has no lease, tenancy or association with this address. In Response on June 3, 2025, Equifax issued a letter stating that the Plaintiffs

documents are illegible and requested identity documents to be resent. The Plaintiff has already provided the required documentations along with the dispute letter. Once again on June 3, 2025, Equifax issued another letter stating that it is not blocking the disputed information at this time. On June 6, 2025, Equifax issued a letter explaining the remedying effects of identity theft.

93.     The Plaintiff mailed a dispute letter to Equifax which was received by Equifax on May 30, 2025, disputing the fraudulent collection, reported as, CREDIT INT'L CORPORATION - ACCOUNT NUMBER: 0775 - RECENT BALANCE: $10,340, on the grounds of identity theft, as the Plaintiff, has no knowledge of this collection account and it does not belong to the Plaintiff. In Response on June 3, 2025, Equifax issued a letter stating that the Plaintiffs documents are illegible and requested identity documents to be resent. The Plaintiff has already provided the required documentations along with the dispute letter. Once again on June 3, 2025, Equifax issued another letter stating that it is not blocking the disputed information at this time.   On June 6, 2025, Equifax issued a letter explaining the remedying effects of identity theft.

94.     The Plaintiff once again mailed a dispute letter to Equifax which was received by Equifax on August 7, 2025, disputing the fraudulent tradeline, reported as, JPMCB CARD SERVICES - ACCOUNT NUMBER. 5161 - BALANCE: $27,693 - STATUS: CHARGE OFF, on the grounds of identity theft, as the Plaintiff did not open or authorize this account. In response on August 22, 2025, Equifax issued an investigation result stating that the item belongs to the Plaintiff but the additional information, date of major delinquency 1st reported and historical account information, have been modified. On August 23, 2025, Equifax issued another letter regarding remedying the effects of identity theft. On October 14, 2025, Equifax notified the Plaintiff that the account, which had been removed as a result of the Plaintiff's dispute, was reinserted onto the Plaintiff's credit file at the request of the furnisher, which had submitted a certification asserting

18

that the account belonged to the Plaintiff and that the information was complete and accurate, based on that certification, Equifax reinserted the disputed account on the Plaintiffs credit file.

**Plaintiff's Damages**

95.      Defendants' derogatory and inaccurate reporting of the above-described fraudulent tradelines, account information and inquiries on Plaintiff's credit reports negatively reflects upon Plaintiff's financial obligations, credit score and credit worthiness to existing and potential creditors.

96.      Courts have regularly held that allegations of lower credit scores, taken as true, are sufficient to allege a concrete injury-in-fact for the purpose of standing under Article III. See *Pedro v. Equifax, Inc.*, 868 F.3d 1275 (11th Cir. 2017) ("[H]er credit score dropped 100 points as a result of the challenged conduct. Because Pedro alleged that she suffered an injury in fact, she has standing to pursue her complaint."); See *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583 (7th Cir. 2016) (standing where Plaintiffs alleged that they "have suffered damage to their credit and been forced to pay Ocwen greater payments and a higher interest rate"); See *Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691 (N.D. Ill. 2016) ("a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing"); See *Binns v. Ocwen Loan Servicing, LLC*, No. 14- 01764, 2015 U.S. Dist. LEXIS 132743, 2015 WL 5785693, at *9 (S.D. Ind. Sept. 30, 2015) ("injuries to plaintiffs' credit scores and reputations were considered intangible harms"); See *Rothman v. U.S. Bank Nat'l Ass'n*, No. 13-03381, 2014 U.S. Dist. LEXIS 141100, 2014 WL 4966907, at *5 (N.D. Cal. Oct. 3, 2014) ("Injury to a credit score is sufficient to constitute 'actual damages'"); See *Green v. RentGrow, Inc.*, No. 2:16cv421, 2016 U.S. Dist. LEXIS 166229 ("A decrease in credit score may still establish an injury in fact sufficient to confer standing"); See *Adams v. Fifth Third Bank*, No. 3:16-CV-00218-TBR, 2017 U.S. Dist.

LEXIS 18932 (W.D. Ky. Feb. 9, 2017) ("Plaintiffs' allegations of lower credit scores … are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III."); and, See *Coulbertson v. Experian Info. Sols., Inc.*, No. 16-cv-05672-RS, 2017 U.S. Dist. LEXIS 69484 (N.D. Cal. Mar. 24, 2017) ("At a minimum, *Coulbertson* has alleged a sufficient injury-in-fact through her claim that her credit score suffered as a result of the credit report she disputes").

97.    As a result of Defendants' conduct, including the continued publication of false identifying information or tradelines, Plaintiff suffered concrete injuries, including but not limited to emotional distress and manifestations of emotional distress associated with fraudulent information remaining  in his credit files, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, expenses associated with credit report disputes and the deprivation of his statutory rights to accurate reporting and meaningful dispute resolution. These injuries are concrete and particularized and confer standing under Article III. See *Coulter v. Sagestream, LLC*, 501 F.Supp.3d 298 (2020); *Norman v. Trans Union, LLC*, 669 F.Supp.3d 351 (2023); *Chaitoff v. Experian Information Solutions, Inc.*, 79 F.4th 800 (2023).

## COUNT I - VIOLATIONS OF 15 U.S.C. §1681c-2
## AGAINST TRANS UNION

98.    Plaintiff incorporates by reference paragraphs 1, 5, 6, 8, 9, 20-65, 71-81, and 95-97 as if fully stated herein.

99.    During the relevant timeframe, Trans Union received Plaintiff's disputes which requested a block of the fraudulent information.

100.    Plaintiff disputed the information on her Trans Union credit report, identified herself, advised Trans Union of the information being fraudulent, furnished Trans Union with a copy of her police report and requested that Trans Union block the fraudulent information.

101.    Rather than block the fraudulent information, Trans Union negligently and willfully disregarded its obligations under the FCRA by merely seeking verification of the disputed information from the furnisher of that credit information and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of Section 1681c-2.

102.    Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

103.    Alternatively, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT II - VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST TRANS UNION

104.    Plaintiff incorporates by reference paragraphs 1, 5, 6, 8, 9, 20-65, 71-81, and 95-97 as if fully stated herein.

105.    During the relevant time frame, Trans Union received Plaintiff's disputes which requested that fraudulent information be removed from her credit file.

106.    Trans Union violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

107.    Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

108.    Alternatively, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT III - VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST TRANS UNION

109.    Plaintiff incorporates by reference paragraphs 1, 5, 6, 8, 9, 20-65, 71-81, and 95-97 as if fully stated herein.

110.    Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

111.    After receiving Plaintiff's disputes, Trans Union was placed on notice that it was reporting fraudulent information, yet Trans Union continues to include the fraudulent information in Plaintiff's credit file.

112.    Trans Union's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

113.    In the alternative, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT IV - VIOLATIONS OF 15 U.S.C. §1681c-2
## AGAINST EXPERIAN

114.    Plaintiff incorporates by reference paragraphs 1, 5, 6, 10, 11, 20-65, 71 ,72, 82, 83, and 95-97 as if fully stated herein.

115.    During the relevant timeframe, Experian received Plaintiff's disputes which requested a block of the fraudulent information.

116.    Plaintiff disputed the information on her Experian credit report, identified herself, advised Experian of the information being fraudulent, furnished Experian with a copy of her police report, and requested that Experian block the fraudulent information.

117.    Rather than block the fraudulent information, Experian negligently and willfully disregarded its obligations under the FCRA by merely seeking verification of the disputed information from the furnisher of that credit information and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of Section 1681c-2.

118.    Experian's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

119.    Alternatively, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT V - VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST EXPERIAN

120.    Plaintiff incorporates by reference paragraphs 1, 5, 6, 10, 11, 20-65, 71 ,72, 82, 83, and 95-97 as if fully stated herein.

121.    During the relevant time frame, Experian received Plaintiff's disputes which requested that the fraudulent information be removed from her credit file.

122.    Experian violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

123.    Experian's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

124.    Alternatively, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT VI - VIOLATIONS OF 15 U.S.C. §1681e(b)
## AGAINST EXPERIAN

125.    Plaintiff incorporates by reference paragraphs 1, 5, 6, 10, 11, 20-65, 71, 72, 82, 83, and 95-97 as if fully stated herein.

126.    Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

127.    After receiving Plaintiff's disputes, Experian was placed on notice that it was reporting fraudulent information, yet Experian continues to include the fraudulent information in Plaintiff's credit file.

128.    Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT VII - VIOLATIONS OF 15 U.S.C. §1681c-2
## AGAINST EQUIFAX

129.    Plaintiff incorporates by reference paragraphs 1, 5, 6, 12, 13, 20-65, 71, 72, 84-97 as if fully stated herein.

130.    During the relevant timeframe, Equifax received Plaintiff's disputes which requested a block of the fraudulent information.

131.    Plaintiff disputed the information on her Equifax credit report, identified herself, advised Equifax of the information being fraudulent, furnished Equifax with a copy of her police report, and requested that Equifax block the fraudulent information.

132.    Rather than block the fraudulent information, Equifax negligently and willfully disregarded its obligations under the FCRA by merely seeking verification of the disputed information from the furnisher of that credit information and refusing to follow the FCRA

requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of Section 1681c-2.

133.    Equifax's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. Alternatively, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT VIII - VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST EQUIFAX

134.    Plaintiff incorporates by reference paragraphs 1, 5, 6, 12, 13, 20-65, 71, 72, 84-97 as if fully stated herein.

135.    During the relevant time frame, Equifax received Plaintiff's disputes which requested that the fraudulent information be removed from her credit file.

136.    Equifax violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

137.    Equifax's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

138.    Alternatively, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT IX - VIOLATIONS OF 15 U.S.C. §1681e(b)
### AGAINST EQUIFAX

139.    Plaintiff incorporates by reference paragraphs 1, 5, 6, 12, 13, 20-65, 71, 72, 84-97 as if fully stated herein.

140.    Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

141.    After receiving Plaintiff's disputes, Equifax was placed on notice that it was reporting fraudulent information, yet Equifax continues to include the fraudulent information in Plaintiff's credit file.

142.    Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

143.    In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT X - VIOLATIONS OF 15 U.S.C. §1681s-2(b)
### AGAINST CHASE

144.    Plaintiff incorporates by reference paragraphs 1, 5, 6, 14-15, 20-72, 74, 79, 80, 83, 85, 86, 87 and 94-97 as if fully stated herein.

145.    CHASE is a furnisher under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

146.    CHASE violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes when it failed to review all relevant information provided by the credit reporting agencies.

147.    As a result of CHASE's violations of the FCRA, Plaintiff has been damaged.

148.    CHASE negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

149.    Additionally, CHASE committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

150.    Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against CHASE in the form of actual damages, statutory damages, punitive damages, Attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT XI - VIOLATIONS OF FLA. STAT. §559.72(9) AGAINST CHASE

151.    Plaintiff incorporates by reference paragraphs 1, 2, 5, 6, 14-15, 20-72, 74, 79, 80, 83, 85, 86, 87 and 94-97 as if fully stated herein.

152.    At all relevant times to this action, CHASE is subject to and must abide by the laws of Florida, including Fla. Stat. §559.72.

153.    After Plaintiff placed CHASE on notice that his accounts were used fraudulently, CHASE had no reasonable basis to continue to report the fraudulent information to the credit reporting agencies.

154.    CHASE violated Florida Statute § 559.72(9) by claiming, attempting, or threatening to enforce a debt when CHASE knew that the debt was not legitimate or asserting the existence of some other legal right when CHASE knew that right did not exist.

155.    Specifically, CHASE communicated false credit information about Plaintiff.

156.    "Any person who fails to comply with any provision of §559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with §559.72, the frequency and persistence of the non-compliance, and the extent to which the noncompliance was intentional." Fla. Stat. §559.77(2) (emphasis added).

157.    As a result of CHASE's violations, Plaintiff suffered damages including but not limited to emotional distress and time spent addressing CHASE's illegal collection practices.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in his favor and against CHASE actual damages, statutory damages, and punitive damages pursuant to Fla. Stat. §559.77; attorneys' fees, litigation expenses and costs of the instant suit; and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT XII - VIOLATIONS OF 15 U.S.C. §1681s-2(b)
## AGAINST AMERICAN EXPRESS COMPANY

158.    Plaintiff incorporates by reference paragraphs 1, 5, 6, 16-17, 20-72, 74, 79, 80, 83, 85, 86, 87 and 94-97 as if fully stated herein.

159.    AMEX is a furnisher under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

160.    AMEX violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes when it failed to review all relevant information provided by the credit reporting agencies.

161.    As a result of AMEX's violations of the FCRA, Plaintiff has been damaged.

162.    AMEX negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

163.    Additionally, AMEX committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

164.    Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against AMEX in the form of actual damages, statutory damages, punitive damages, Attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT XIII - VIOLATIONS OF FLA. STAT. §559.72(9)
### AGAINST AMERICAN EXPRESS COMPANY

165.    Plaintiff incorporates by reference paragraphs 1, 2, 5, 6, 16-17, 20-72, 74, 79, 80, 83, 85, 86, 87 and 94-97 as if fully stated herein.

166.    At all relevant times to this action, AMEX is subject to and must abide by the laws of Florida, including Fla. Stat. §559.72.

167    After Plaintiff placed AMEX on notice that the accounts were opened fraudulently, AMEX had no reasonable basis to continue to report the accounts to the credit reporting agencies.

168.    AMEX violated Florida Statute § 559.72(9) by claiming, attempting, or threatening to enforce a debt when AMEX knew that the debt was not legitimate or asserting the existence of some other legal right when AMEX knew that right did not exist.

168.    Specifically, AMEX communicated false credit information about Plaintiff.

169.    "Any person who fails to comply with any provision of  §559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with §559.72, the frequency and persistence of the non-compliance, and the extent to which the noncompliance was intentional." Fla. Stat. §559.77(2) (emphasis added).

170.    As a result of AMEX's violations, Plaintiff suffered damages including but not limited to emotional distress and time spent addressing AMEX's illegal collection practices.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in his favor and against AMEX in the form of actual damages, statutory damages, and punitive damages pursuant to Fla. Stat. §559.77; attorneys' fees, litigation expenses and costs of the instant suit; and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT XIV - VIOLATIONS OF 15 U.S.C. §1681s-2(b) AGAINST CIC

171.    Plaintiff incorporates by reference paragraphs 1, 5, 6, 18-72, 93, 95-97 as if fully stated herein.

172.    CIC is a furnisher under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

173.    CIC violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes when it failed to review all relevant information provided by the credit reporting agencies.

174.    As a result of CIC's violations of the FCRA, Plaintiff has been damaged.

175.    CIC negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

176.    Additionally, CIC committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

177.    Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against CIC in the form of actual damages, statutory damages, punitive damages, Attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT XV - VIOLATIONS OF FLA. STAT. §559.72(9) AGAINST CIC

178.    Plaintiff incorporates by reference paragraphs 1, 2, 5, 6, 18-72, 93, 95-97 as if fully stated herein.

179.    At all relevant times to this action, CIC is subject to and must abide by the laws of Florida, including Fla. Stat. §559.72.

180.    After Plaintiff placed CIC on notice that the account was opened fraudulently, CIC had no reasonable basis to continue to report the account to the credit reporting agencies.

181.    CIC violated Florida Statute § 559.72(9) by claiming, attempting, or threatening to enforce a debt when CIC knew that the debt was not legitimate or asserting the existence of some other legal right when CIC knew that right did not exist.

182.    Specifically, CIC communicated false credit information about Plaintiff.

183.    "Any person who fails to comply with any provision of  §559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with §559.72, the frequency and persistence of the non-compliance, and the extent to which the noncompliance was intentional." Fla. Stat. §559.77(2) (emphasis added).

184.    As a result of CIC's violations, Plaintiff suffered damages including but not limited to emotional distress and time spent addressing CIC's illegal collection practices.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in his favor and against CIC in the form of actual damages, statutory damages, and punitive damages pursuant to Fla. Stat. §559.77; attorneys' fees, litigation expenses and costs of the instant suit; and such other and further relief including as the Court deems equitable and just under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: 1/16/2026                            Respectfully submitted,

SHARMIN & SHARMIN, P.A.

/s/ Eyal S. Eisig
Eyal S. Eisig, Esq.
eyal@sharminlaw.com

33

FBN: 109438
830 North Federal Highway
Lake Worth Beach, FL 33460
Main: 561-655-3925
Fax: (844) 921-1022

Attorneys for Plaintiff